UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS ORTIZ VEGA, et al., | Case No. 1:21-cv-00498-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| GEICO Choice Insurance Company, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiffs, through counsel Donald Carey, bring this action for breach of contract and bad faith against Defendant, GEICO Choice Insurance Company, alleging that GEICO failed to properly communicate settlement opportunities to their insured, Shentasha Bybee. (Dkt. 1.) Before the Court is Defendant GEICO's Motion to Disqualify Carey from representing Plaintiffs in this action. For the reasons discussed below, the Court will grant the motion.[1]

---

[1] The Court has the utmost respect for Donald Carey as an attorney and the Court's decision is not a reflection on him or his professional conduct. The Court also finds this to be a close issue. Nonetheless, as discussed below, the Court, in the exercise of its discretion, will disqualify Mr. Carey from representing Plaintiffs.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Since at least 2016 through January 2019, Carey and his firm were retained counsel in multiple cases representing GEICO[2] directly, as well as being retained by GEICO to represent GEICO's insureds. In these cases, Carey and his firm worked directly with GEICO representatives, including three GEICO representatives—Jill Dalrymple, Sherry Voorhees, and Jessica Douglas—that are witnesses in, and that Carey seeks to depose in, the present case. During Carey's work with and for GEICO, he learned confidential private information, and it was understood by the GEICO representatives that this information would be kept confidential. To ensure that confidentiality, Carey entered into a confidentiality agreement with GEICO.

The last assignment that Carey received from GEICO was in June 2018. His last work with and for GEICO was in January 2019. (*See, e.g.,* Dkts. 38-34, 38-35.) Carey was contacted regarding the present case in February 2020, just over a year after his work with and for GEICO ended.

GEICO moves to have Carey disqualified from representing Plaintiffs in the

---

[2] The Court recognizes that there are six separate GEICO entities registered in Idaho, only one of which is named as a defendant in the present case. As discussed *infra,* for purposes of this decision, the Court treats the six entities as one and does not, therefore, distinguish between the entities.

present case. In support of its motion, GEICO relies on Carey's repeated representation of GEICO and GEICO's insureds, specifically focusing on three cases in which Carey provided direct representation of GEICO—*Kautzsch*, *Strubel*, and *Delgado*. GEICO also relies on a case in which Carey was retained to represent a GEICO insured—*Herbert v. Thursby*—during mediation, as well as the confidentiality agreement between GEICO and Carey, and an April 2018 training that Carey initiated at GEICO's Region 10 Headquarters.

### A.    *Kautzsch*

In August 2014, GEICO was named as a defendant in *Kautzsch v. GEICO*, a bad faith action brought by Jessica Kautzsch, who was insured under a policy issued by GEICO. Ms. Kautzsch, who was involved in a car accident, alleged that the accident caused serious personal injury; that the other individual involved in the accident was an underinsured motorist; and that she should have received $100,000 from GEICO through her GEICO underinsured motorist policy.

In November 2016, the law firm Carey Perkins, at which Carey was a named partner, accepted direct representation of GEICO in the *Kautzsch* case. Between November 2016 and July 19, 2017, Carey's firm conferred, advised, and strategized with GEICO regarding the case; drafted the answer to the complaint, listing Carey Perkins as the law firm representing GEICO and Carey as lead

counsel; discussed mediation and discovery strategies with GEICO; studied GEICO's claims and training manuals for purposes of responding to requests for discovery; prepared responses to discovery requests, including responses to requests for admissions; analyzed and answered litigation related questions and issues; helped prepare for and was involved in mediation; and prepared briefing for dispositive motions.

In a letter dated July 19, 2017, Carey Perkins notified GEICO that Carey was leaving the firm effective August 1, 2017, and forming the firm Carey Romankiw. (Dkt. 31-1.) In this letter, Carey requested GEICO's authorization to transfer responsibility for several cases, including the *Kautzsch* case, to Carey Romankiw. (*Id.*) GEICO agreed to the requested transfer. The *Kautzsch* case was resolved on August 30, 2017.

### B.   *Delgado*

In *Estate of Delgado v. GEICO*, GEICO received an Underinsured Motorist coverage demand from one of its insured's. Jill Dalrymple, a GEICO representative, referred the matter to Carey while he was still at Carey Perkins. The referral was for the preparation of a coverage letter in response to the demand for coverage. Carey accepted the direct representation of GEICO in the matter on February 15, 2017. As part of this representation, Carey spoke with and

corresponded with GEICO representatives on numerous occasions regarding the

position GEICO would take. This correspondence included asking for additional

information from Ms. Dalrymple. Carey sought and received input from GEICO

representatives regarding the draft letter denying coverage, and received

authorization from GEICO to send the coverage letter. (*Id.*) All billing during the

Carey Perkins' representation in the *Delgado* case was by Carey.

GEICO's letter denying coverage was sent on March 29, 2017. On March

30, 2017, Carey received correspondence from GEICO informing him that he did

not have authorization to file a declaratory judgment action. On April 17, 2017,

Carey revised a GEICO inquiry regarding the denial of claim.

In a letter dated July 19, 2017, in which Carey Perkins notified GEICO that

Carey was leaving the firm effective August 1, 2017, Carey requested GEICO's

authorization to transfer responsibility for the *Delgado c*ase to Carey Romankiw.

GEICO agreed to the requested transfer.

## C. *Strubel*

In November 2017, Dalrymple referred *Strubel v. GEICO* to Carey. The

purpose of the referral was preparation of a coverage opinion for a policy issued by

GEICO. During Carey's representation, he corresponded with GEICO

representatives, including Sherry Voorhees, regarding policy provisions. He

researched GEICO coverage analysis. He had multiple phone calls with GEICO representatives regarding the uninsured motorist definition and the analysis of the uninsured motorist claims and offset provisions. He drafted the coverage letter to Plaintiff's counsel. He reviewed GEICO emails regarding the GEICO policy and court approval, and payment to the insured.

The coverage letter drafted by Carey is dated March 3, 2018, and was emailed to Ms. Voorhees. (Dkt. 38-31.) After he issued the coverage letter, Carey negotiated a settlement of the insured's claim, including discussing and coordinating the settlement with Ms. Voorhees, Ms. Dalrymple, and Jessica Douglas, another GEICO representative. Carey's representation in the matter ended in December 2018.

### D.   *Herbert*

*Herbert v. Thursby* involved a third-party tort defense of a GEICO insured. Ms. Dalrymple referred the case to Carey for representation and specifically for the purpose of having Carey provide GEICO with a comprehensive review of damages for purposes of settlement. Carey entered appearance as defense counsel in December 2017, and the parties agreed to a mediation. Carey prepared for the mediation, including meeting with Ms. Dalrymple to go over the case in detail and preparing a mediation statement. Carey and Ms. Dalrymple attended mediation on

January 17, 2018, and the case resolved. Following mediation, Carey and Dalrymple went out to dinner and drinks before Dalrymple headed back home to Arizona. Subsequent to the mediated resolution, Carey did additional work on the case in relation to the settlement proceeds.

### E.    Confidentiality Agreement

As part of Carey's work with GEICO, he entered into a confidentiality agreement with GEICO.[3] (Dkt. 31-1 at 27.) This agreement collectively refers to GEICO as including Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, and GEICO Secure Insurance Company. The stated purpose of the agreement is "to guarantee the privacy of nonpublic personal information that GEICO may disclose to [Carey] in conjunction with GEICO's performance of its duties and obligations as an automobile insurance company and also in conjunction with [Carey's] performance of its contractual obligations with GEICO, which are in the nature of: Defense Litigation." (*Id.*) The agreement further provides that the

---

[3] The confidentiality agreement provided to the Court is dated August 1, 2017, and was thus entered into after Carey left Carey Perkins and formed Carey Romankiw. (Dkt. 31-1.) There is likely also a prior confidentiality agreement that was in place while Carey was at Carey Perkins.

"duties and obligations imposed by this Agreement are continuing in nature and are not limited to any single or particular transaction nor to any single or particular item of nonpublic personal information." (*Id.*) The confidentiality agreement is dated August 1, 2017, and is signed by Carey as well as a GEICO representative. (*Id.*)

### F.    GEICO Regional Headquarter Meeting

In early 2018, Carey initiated a meeting at GEICO's Region 10 Headquarters in Tucson, Arizona. Prior to the meeting, Carey reached out to Ms. Voorhees regarding what he characterized as "an important" Idaho bad faith decision—*McKinley v. Guar. Nat. Ins. Co.*, 159 P.3d 884 (Idaho 2007)—that he planned to go over at the meeting. (Dkt. 37-1 at 2.) Carey explained to Ms. Voorhees that the *McKinley* decision "deals with the situation where there was an opportunity to settle within policy limits and the surety failed to get that done," and discusses "some claims handling issues and communication issues with [the insurance company's] own insured and assigned defense counsel." (*Id.*)

The meeting was held in April 2018. An estimated 60 GEICO personnel, including claims adjusters at the regional office and some upper management, attended the meeting. During the meeting, Carey discussed the *McKinley* case, and GEICO personnel were able to ask questions, including questions about bad faith

issues in general claims they were working on. (Dkt. 37-2.)

At the time of this April 2018 meeting, the underlying claims file at issue in the present case—the one that Plaintiffs allege was handled in bad faith—was open and active. Further, the complaint filed in the present case alleges:

> GEICO had an obligation to consider the amount of financial risk it and Bybee [the insured] would each be exposed to in the event the offer to settle within limits failed. *McKinley v. Guaranty National Insurance Company*, 144 Idaho 247, 251, 159 P.3d 884, 888 (2007).

(Dkt. 1 at 9, ¶ 61.) Carey has also taken the position in the present case that if the GEICO representatives "had paid attention to the holding in the *McKinley* case, it would not be in the position it is today." (Dkt. 38-1 at 16.) He further contends that the fact that GEICO is in this position "demonstrate[s] that Geico paid no attention to anything I said [during the April 2018 meeting] and did not modify its practices to address the stated concerns regarding communications with its insureds, and the application of the equality of consideration standard set forth in the . . . *McKinley* case." (*Id.*)

With this background in mind, the Court turns to the question of whether Carey should be disqualified from representing Plaintiffs in this action.

## LEGAL STANDARD

Disqualification of counsel is governed by state law, here Idaho state law, and may arise where counsel has violated applicable standards of professional

conduct, including standards regarding conflicts of interest. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).

"The decision to grant or to deny a motion to disqualify counsel is within the discretion of the trial court." *Crown v. Hawkins Co*., 910 P.2d 786, 794 (Idaho Ct. App. 1996) (citation omitted). The trial court must recognize its discretion, and must exercise that discretion consistently with the applicable legal standards, in making a reasoned decision. *Id.* "The moving party has the burden of establishing grounds for disqualification." *Id.*

In deciding a motion for disqualification, the goal of the court is to shape a remedy that "will assure fairness to the parties and the integrity of the judicial process." *Id.* at 795. "Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client. Where the motion to disqualify comes not from a client or former client of the attorney, but from an opposing party, the motion should be reviewed with caution." *Id.*; *see also Hepworth Holzer, LLP v. Fourth Jud. Dist. of State*, 496 P.3d 873, 885 (2021) ("[T]here is a First Amendment right to counsel, but it is seldom articulated in that way. It is more appropriately referred to as 'a right to counsel of choice.' ").

## ANALYSIS

### A.    Rule 1.9 and Substantial Relation

GEICO argues that the Court should disqualify Carey from representing

Plaintiffs pursuant to Idaho Rule of Professional Conduct 1.9(a) and (c).[4]

### 1.    Rule 1.9(a)

Idaho Rule of Professional Conduct 1.9(a) provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Idaho R. Prof. Conduct 1.9(a).

The Court finds that the present case involves matters that are substantially

related to Carey's previous representations of GEICO and, further, that Carey's

interests in the present case are materially adverse to the interests of GEICO within

the meaning of Rule 1.9(a). Accordingly, Carey cannot represent Plaintiffs in this

matter without obtaining informed consent, in writing, from GEICO. *See* Idaho R.

Prof. Conduct 1.9(a)

---

[4] GEICO also relies on the confidentiality agreement in support of disqualification. Because the Court finds Carey to be disqualified under Rule 1.9, the Court need not analyze whether the confidentiality agreement would also lead to disqualification.

The commentary to Rule 1.9 explains that matters are "substantially related" under the Rule "if they involve the same transaction or legal dispute, or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.*, cmt. 3. "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id.*

Here, as set forth above, Carey repeatedly represented GEICO directly, as well as being retained by GEICO to represent its insureds. At least one of the direct representation cases involved a bad faith claim, which is similar to the bad faith claim brought in the present case.

During Carey's representations of GEICO and GEICO insureds, Carey worked closely and extensively with GEICO representatives, including representatives that are witnesses in, and that Carey seeks to depose in, the present case—Ms. Dalrymple, Ms. Voorhees, and Ms. Douglas. Carey discussed cases in detail with these GEICO representatives, and worked closely with them on such things as coverage, litigation strategies, settlement procedures and strategies, and

the positions that GEICO would take. Carey also received and reviewed confidential information as part of his representation, including GEICO training and policy manuals. This is significant because GEICO's coverage and settlement procedures and strategies are being challenged in the present case.

Carey also initiated a meeting at a GEICO regional headquarters in 2018 to discuss a 2007 Idaho case—*McKinley*—which deals with bad faith issues. An estimated 60 GEICO personnel attended this meeting, including claims adjusters and upper management. During the meeting, Carey discussed the *McKinley* decision, and GEICO personnel in attendance were able to discuss and ask questions about claims they were working on and bad faith issues in general. At the time of this meeting, the underlying claims file at issue in the present case was open and active. And, again, the handling of that underlying claims file is the basis for the bad faith claim raised in this case; the Complaint cites to and relies on *McKinley* in support of that claim. Finally, Carey takes the position that the fact that GEICO is in the position it is today—of being sued on the basis of alleged bad faith—demonstrates that Geico did not pay attention to what Carey said during that meeting and did not modify practices to address concerns he raised during the meeting, including in relation to the *McKinley* case. It is quite possible, under these circumstances, that Carey could become a witness in the present case in relation to

what occurred during that 2018 meeting.

The Court finds that the information and knowledge gained by Carey during his association with GEICO, including his representations of GEICO and its insureds; his close working relationships and exchanges with GEICO personnel; and the April 2018 meeting, goes far beyond mere general knowledge of GEICO's policies and practices. Instead, Carey has had access to and gained knowledge of specific facts that are relevant to the issues raised in the present case.

The Court finds that there is, at minimum, a reasonable probability that confidential information was shared with Carey during the prior representations and that this information could potentially be used against GEICO in the present matter. Thus, there is a substantial relationship between the present case and Carey's prior representations of and for GEICO. *See Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) ("[I]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed."). Carey is disqualified from representing GEICO under Rule 1.9(a) unless GEICO gives informed consent, confirmed in writing.

### 2.  Rule 1.9(c)

The Court also finds that Carey is disqualified from representing Plaintiffs

under Rule 1.9(c), which provides:

> A lawyer who has formerly represented a client in a matter . . . shall not thereafter:
>
>> (1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Idaho R. Prof. Conduct 1.9(c).

The Court finds it highly likely that information and knowledge that Carey acquired through his prior representation of GEICO and GEICO insureds may be used to the disadvantage of GEICO in this litigation. As discussed above, Carey has worked extensively and closely with the GEICO representatives that he seeks to depose in the present case. He learned confidential information about such things as GEICO coverage determinations, claims processing, training, litigation, and settlement procedures and strategies. There is also the April 2018 meeting at which Carey discussed with GEICO adjusters and upper management the very case he relies upon in arguing bad faith in the present case—*McKinley*. And, at the time of the meeting, the underlying claims file at issue in the present case was open and active. Moreover, Carey has knowledge about not only the information he provided at this meeting, but also the questions that were asked by GEICO representatives,

and the general discussions that occurred during the meeting. The significance of this meeting is underscored by Plaintiffs' citing of *McKinley* in the complaint in the present case, as well as Carey's position regarding GEICO's failure to change its practices in light of Carey's discussion of *McKinley* at the meeting. And, again, this was at a time when the claim underlying the present case was open and being worked on by GEICO representatives.

In sum, through Carey's representation of GEICO and its insureds, and his April 2018 meeting with GEICO representatives, he has acquired information and knowledge he would not otherwise have about GEICO, and this knowledge may very well disadvantage GEICO in the present litigation. Carey "cannot automatically flip a switch and purge himself of all the information he gained about [GEICO]" during his prior representations, including any weaknesses in GEICO's policies, procedures, strategies, training, and claims handling and processing. *Andersen v. Valley Cnty.*, No. 1:16-CV-00554-CWD, 2017 WL 2311668, at *4 (D. Idaho May 26, 2017).

Plaintiffs contend, nonetheless, the Rule 1.9(c) is inapplicable because no confidential information was shared with Carey during his prior representations of GEICO that he could not have obtained through discovery. The Court is not persuaded.

**MEMORANDUM DECISION AND ORDER - 16**

Carey, as counsel retained by and for GEICO, would have presumably been provided access to confidential information. Ms. Dalrymple and Ms. Voorhees would likely have felt at ease and free to share confidential information with Carey, such as claims handling policies and procedures, the hierarchy of settlement authority, negotiation strategies, settlement pay ranges, and other factors that GEICO considers in assessing whether to settle a claim. Indeed, there was a confidentiality agreement in place to ensure that these communications and other information gained during the representations were kept confidential. The Court rejects Plaintiffs' attempt to now disclaim that Carey obtained confidential information that he would not have possessed but for his prior representations of and for GEICO. *See Persichette v. Owners Ins. Co.*, 462 P.3d 581, 590 (Colo. 2020) (finding that attorney probably possessed confidential factual information due to representation in former cases); Idaho R. of Prof. Conduct 1.9, cmt. 3 ("A conclusion about the possession of such [confidential] information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.").

As the Ninth Circuit explained in *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980):

> Perhaps the most important facet of the professional relationship
> served by this rule of disqualification is the preservation of secrets and

confidences communicated to the lawyer by the client. If there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed. Confidentiality, however, is not the only aspect of the professional tie preserved by the disqualification rule.

Both the lawyer and the client should expect that the lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf. That professional commitment is not furthered, but endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter. Both the fact and the appearance of total professional commitment are endangered by adverse representation in related cases. From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.

*Id.* at 998-99 (citations and footnote omitted).

In sum, the Court finds that, at minimum, there is a high probability that confidential information was acquired by Carey through his prior representations of and for GEICO, and that this information may be used to the disadvantage of GEICO in this litigation. Carey is accordingly disqualified from representing Plaintiffs under Rule 1.9(c).

## B.    Plaintiffs' Additional Arguments

The Court now turns to two additional arguments raised by Plaintiffs: the

treatment of the GEICO entities and the question of waiver.[5]

### 1.  Treatment of GEICO Entities

Plaintiffs attempt to minimize Carey's connection with GEICO by pointing out that there are six affiliated entities incorporated under the GEICO name in the state of Idaho; and that the only one of those entities—GEICO Choice Insurance Company, LLC—is the defendant in this case. Plaintiffs argue that only GEICO Choice has standing to object to Carey's representation in this case; that the only case in which Carey represented GEICO Choice is in the *Strubel* case; and that GEICO Choice does not have standing to bring this motion except to the extent it relies on the *Strubel* case. The Court is unpersuaded by Plaintiffs' arguments and finds more than sufficient evidence to treat the various GEICO affiliated entities as a singular GEICO unit.

The Court recognizes that a "lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization" *unless* "the affiliate should also be considered a client of the lawyer" or where "the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's

---

[5] The Court has also considered the other arguments raised by Plaintiffs and finds them unavailing.

**MEMORANDUM DECISION AND ORDER - 19**

representation of the other client." Idaho R. of Prof. Conduct 1.7, cmt. 34. In practice, courts have generally considered two factors when determining if representation of one entity is a de facto representation of another, and would thus preclude an attorney from engaging in litigation adverse to either entity. These two factors are "(i) the degree of operational commonality between affiliated entities, and (ii) the extent to which one depends financially on the other." *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 210 (2d. Cir. 2010).

Here, the Court finds there is both operational commonality and financial dependency between the GEICO entities and that, thus, Carey's representation of any of the six GEICO entities was a de facto representation of the other GEICO entities. First, as to operational commonality, it is undisputed that the same claims adjusters and examiners handle claims for all GEICO affiliates, and all affiliates also use the same training and policy manuals. Further, each of the affiliates share a legal department, and the confidentiality agreement into which Carey entered was between himself and all six of the GEICO affiliated entities.

In addition, Carey himself admits that he provided advice to GEICO in general, and not to any single GEICO affiliate, when he met with GEICO personnel in April 2018 to discuss the *McKinley* case and compliance with Idaho bad faith law. Indeed, because the claims adjusters and examiners handle claims

for all of the GEICO affiliated entities, it would be impossible for Carey to provide advice to, work with, and/or strategize with a claims adjuster or examiner that worked for just one of the affiliates. Under these circumstances, the Court cannot consider the GEICO entities to be operationally separate. *See Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 924 (N.D. Cal. 2003) (finding it appropriate to treat two corporations as one for purposes of a conflict of interest where there was  "substantial overlap in management in general" and "the legal affairs with respect to the claims at issue in the two cases are managed by the same group for both [corporations]"); *Discotrade Ltd. V. Wyeth-Ayerst Int'l*, 200 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2002) (finding two corporations so close "as to deem them a single entity" due in part to a shared board of directors, several senior officers, a common computer network, email system, travel department, and health benefit plan); *Eastman Kodak Co. v. Sony Corp.*, 2004 WL 2984297 (finding integrated technology systems and shared leadership were indicative of a "close and interdependent relationship" and thus there were not separate entities for purposes of representation).

The Court also finds that there is financial interdependence between the various GEICO entities. The GEICO entities are marketed as one entity, they share brand loyalty among the public, and the failure of one will be to the financial

detriment of the others. An adverse outcome in this case for one entity would certainly be an adverse outcome for Carey's prior GEICO clients and their shared leadership structure, regardless of their different incorporated name.

Because there is both operational commonality and financial dependence between the various GEICO entities, and because information on methodology, strategy, and internal processes gained from one entity could therefore easily transfer to another entity, the Court considers the GEICO entities as a single unit for purposes of addressing the motion to disqualify. Thus, involvement with, and representation of, one of the entities on the part of Carey will qualify as representation of them all.

### 2.  Waiver

Finally, Plaintiffs argue that GEICO waived its right to disqualify him as counsel for Plaintiffs by failing to timely raise the issue. The Court disagrees.

"A motion to disqualify opposing counsel should be filed at the onset of the litigation, or 'with promptness and reasonable diligence once the facts' upon which the motion is based have become known. A failure to act promptly may warrant denial of the motion." *Weaver v. Millard*, 819 P.2d 110, 116 (Idaho 1991). *See also, Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) ("It is well settled that a former client who is entitled to object to an attorney

representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."). However, waiver is generally only applied where the motion to disqualify is used in an abusive manner as a part of litigation tactics. *Atasi Corp. v. Seagate Tech*, 847 F.2d 826, 832 (Fed. Cir. 1988). "The need for upholding high ethical standards in the legal profession far outweighs the problems caused by the delay in filing the disqualification motion." *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st. Cir. 1984).

Here, Plaintiffs claim that GEICO has been aware of Carey's involvement in this case for 26 months, and that the failure to bring the motion to disqualify sooner results in waiver. In support of this claim, Plaintiffs cite to email correspondence dated March 2020 in which the attorneys in the underlying litigation between Plaintiffs and GEICO's insured (Bybee) discussed a possible conflict due to Carey's previous representation of GEICO. In denying that this was a concern, Carey noted that it had been some time since he did work for GEICO insureds and that, since GEICO was not a named party in the litigation, this past association would probably not be an issue.[6] No further action was taken at that

---

[6] Carey failed to mention in that correspondence that he had also directly represented GEICO on several occasions.

**MEMORANDUM DECISION AND ORDER - 23**

time, and the matter of a potential conflict was dropped. GEICO was not a party to the underlying litigation and thus did not have reason to raise a claim for Carey's disqualification .

GEICO was first named as a party in relation to the underlying claim when the present lawsuit was filed in December 2021. The motion to disqualify was filed approximately 5 months later. Further, there is evidence that GEICO's counsel was unaware of Carey's previous representation of GEICO until shortly before the motion to disqualify was filed. Under these circumstances, the Court finds that GEICO's motion was timely filed and that, accordingly, the claim for disqualification of counsel has not been waived.

## ORDER

**IT IS ORDERED** that Defendant's Motion to Disqualify Counsel (Dkt. 30) is **GRANTED**.

DATED: December 13, 2022

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 24**