UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS ORTIZ VEGA disabled adult, E.O.R. minor child, K.O.R. minor child, L.O.R. minor child, by and through SILVIA ORTIZ, Guardian, TANYA GREENE as personal representative of the Estate of Cole Hatcher and on behalf of his heirs, and C.C.H. a minor child by and through SALONE PAGE, mother and natural guardian, as Assignees of SHENTASHA BYBEE,<br><br>        Plaintiffs,<br><br>    v.<br><br>GEICO Choice Insurance Company, and Does I to X ROE Corporations I to X,<br><br>        Defendants. | Case No. 1:21-cv-00498-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant GEICO Choice Insurance Company's Motion for

Expenses Re Improperly Terminated Deposition (Dkt. 78). For the reasons explained

below the Court will grant GEICO's motion as set forth below.

## BACKGROUND

Plaintiffs, as assignees of Shentasha Bybee, bring this breach of contract and

insurance bad faith case against GEICO. In November 2017, Ms. Bybee was driving

while intoxicated and ran a stop sign, hitting another vehicle. The collision resulted in the

death of three individuals, including a mother and her child, and caused serious injuries to

others. GEICO insured Ms. Bybee at the time of the crash. She drove the vehicle of her then-fiancé, Michael Wornell, who rode as a passenger in the vehicle. As a result of the crash, Mr. Wornell suffered multiple injuries, including a traumatic brain injury that damaged his long-term memory.

Following the accident, Ms. Bybee pled guilty to two counts of vehicular manslaughter and one count of aggravated under the influence. She is currently serving a 15-year term of incarceration in a state facility. During her first year of incarceration, Ms. Bybee spoke to Mr. Wornell daily, and sometimes multiple times per day. Mr. Wornell had a Power of Attorney for Ms. Bybee and served as Ms. Bybee's primary point of contact between Ms. Bybee and GEICO's claims handlers before GEICO retained counsel to represent her, when Bybee then became the principal point of contact.

Mr. Wornell is now a long-haul truck driver with multiple children. Seeking to depose Mr. Wornell, GEICO counsel had to hire a private investigator to locate and serve Mr. Wornell with a subpoena to appear at a deposition. According to GEICO, Mr. Wornell called GEICO counsel after being served with the subpoena and expressed his "displeasure" about having to appear for the deposition. After counsel explained to Mr. Wornell that the subpoena required him to appear and that they would do their best to minimize the burden on him, Mr. Wornell agreed to attend the deposition but requested that counsel remind him of the deposition given his unpredictable work schedule.

Acceding to Mr. Wornell's request for a reminder call, GEICO counsel called Mr. Wornell shortly before his scheduled deposition on January 26, 2024. Mr. Wornell had been driving in North Dakota, and he found a safe location to pull over and join the Zoom

deposition while idling in his truck. Counsel for the parties, as well as the court reporter and videographer, worked with Mr. Wornell to ensure the deposition went as smoothly as possible.

Less than ten minutes into the deposition, GEICO's counsel presented Mr. Wornell with notes from GEICO's claims file, and asked him whether he would agree "that the written claims file notes are likely a better or more accurate record of what communications occurred in connection with the GEICO claim than [his own impaired memory]." *Wornell Dep.* 9:22-10:1, Dkt. 79. This question led Plaintiffs' counsel to object and ultimately terminate the deposition. The following is the relevant excerpts from the deposition transcript:

> Q. I know that this is probably not your favorite topic, but would you mind describing kind of the nature of your injuries and what happened to you in that accident?
>
> A. Yeah. My injuries were a broken left ankle and heel. Separated bones and ligaments in my left elbow. Broken ribs. Stomach and intestine went through and tore my diaphragm. Collapsed my left lung. Put a nick in my heart. That's my injuries. Anything other than that, I don't know. Oh, and head. Something to do with my head, too.
>
> Q. So you did have some -- some traumatic brain injuries associated with the accident?
>
> A. Memory loss, yeah. Pretty much.
>
> Q. You had some memory loss. And what is the -- To the extent you can explain it, what is kind of the nature of -- of your memory loss?
>
> A. I don't remember pretty much anything from when I woke up in the hospital. I remember some things from the past of childhood, but I don't remember -- I don't remember anything

really. Unless people bring it up and jog my memory about it, then I might start to remember it.

Q. Okay.

A. I have a lot of long-term memory loss.

Q. Okay. I'm sorry that you're dealing with that.

Q. Now, you just described that you have some memory issues. I am going to show you some documents that GEICO maintains that are their claims file notes. You will -- there's no reason for you to have ever seen these, but I'm just going to ask you questions to see if you have any recollection that is similar to what's being described in the claims file notes. Okay?

A. Okay.

Q. Okay. And based on what you've described with your -- your kind of memory issues, would you agree that the written claims file notes are likely a better or more accurate record of what communications occurred in connection with the GEICO claim then --

MS. KOEHLER: So I'm going to strongly object. This is a fact and eyewitness, and I'm going to object to you trying to create his memory. And so I'm going to ask that you lay a foundation. That you do not try to show him documents before he can even ask him a question to try to coach him through, given the fact that he has had such a significant traumatic brain injury. It would be entirely improper.

MS. HENSON: Okay. Your objection is noted.

MS. KOEHLER: More than an objection. I think it would be witness tampering if you continue an attempt to go the route that you want to go. So I would -- I would -- I would -- I would honestly demand that we stop the deposition if you continue to go down this way.

MS. HENSON: What way? I'm sorry.

MS. KOEHLER: To show him documents, to have them assume that they're true because your adjusters wrote them. To

try to use them to refresh his memory when you haven't established, given his testimony that he has a memory that can be refreshed from those events.

MS. HENSON: Well, let me ask the questions and see what he says.

MS. KOEHLER: I'm not. I'm not going to let you ask the questions unless you can establish --

MS. HENSON: I can --

MS. KOEHLER: Any foundation -- any foundation for -- I really -- this is very unusual. And, Mr. Wornell, I'm sorry for this colloquy, but, you know, you were very badly injured, and you are a fact and eye -- basically an eyewitness, to some degree. And this would be tampering with a witness and trying to create --I can only tell you, I don't think I've ever seen this kind of a situation.

MS. HENSON: I disagree. I mean, I --I'm sorry. Karen, I disagree. And if you want to try to stop the deposition and get the Court to decide this issue --

MS. KOEHLER: I do.

MS. HENSON: -- then.

MS. KOEHLER: I do. Unless you want to try to lay foundation, and do it -- do it appropriately.

MS. HENSON: Okay. Well, I -- The deposition really hasn't even begun yet, so...

MS. KOEHLER: You were going to start showing him documents. He doesn't have any memory. And you told him that he didn't create them and then you asked him to verify that those documents were more true than his memory. I think that that is highly improper.

MS. HENSON: Let me ask a question, then. I don't even need to show him the documents. I can just say, This is what our claims file notes show. Is that inconsistent with your recollection, if you have a recollection? Is that --

MS. KOEHLER: Again, I think that you're -- I think that it's highly improper. I would like -- And I'm sorry, Mr. Wornell. I would like to take a brief recess and talk to counsel -- plaintiff counsel who are the line. Can we do that? Just go off the record for like, five minutes.

MS. HENSON: Sure.

THE VIDEOGRAPHER: We are off the record at 9:11 a.m. Arizona time and 10:11 a.m. North Dakota time.

(A break was taken at 9:11 a.m.)

THE VIDEOGRAPHER: This concludes today's deposition of Michael Wornell. We are off the record at 9:18 a.m. Arizona time and 10:18 a.m. North Dakota time.

*Wornell Dep*. 8:7-13:3, Dkt. 79.

After the deposition was terminated GEICO's counsel emailed Plaintiffs' counsel to provide notice that GEICO would seek to recover expenses under Federal Rule of Civil Procedure 30(d). Later that day, pursuant to the Court's informal discovery dispute resolution process, a paralegal with Ms. Koehler's law firm contacted the Court and confirmed that "[t]he deposition was immediately halted at the insistence of Plaintiffs' counsel," and requested that the Court "estop the Defendant from using documents to create memories for witnesses who have suffered traumatic brain injuries …." GEICO counsel responded by email with its position, including its attempt to seek costs. As costs cannot be awarded through an informal discovery dispute resolution process, and the deposition had already been terminated, the Court suggested that it may be more expeditious to proceed with a motion.

Consistent with the Court's suggestion, GEICO filed this motion, arguing that Plaintiffs' counsel improperly terminated the deposition and seeking an award of expenses under Federal Rule of Civil Procedure 30(d). Plaintiffs' counsel responds that she "suddenly had a difficult split-second decision to make: allow counsel to proceed—and potentially poison the memory of the brain injured witness—or terminate the deposition." *Pls' Resp. Br.*, p. 2, Dkt. 80. Plaintiffs chose the latter, and argue that sanctions are not appropriate here; instead, they say the parties need instruction on how to proceed, and Plaintiffs "welcome the Court's guidance on how to navigate the delicate evidentiary waters presented here." *Id.*

## DISCUSSION

### 1. Termination of Deposition Under Federal Rule of Civil Procedure 30

Rule 26(b)(1) permits discovery in civil actions "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" Fed.R.Civ.P. 26(b)(1). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal. 2005) (citation and internal quotation marks omitted). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal.1998); *see also* Fed. Civ. R. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Federal Rules of Civil Procedure 30 governs counsel's conduct during a deposition. Under Rule 30(c)(2), an "objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2).  "A person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). *Id.* (emphasis added).

Rule 30(d)(3) "is the only authority allowing the interruption of a deposition." *Biovail Lab'ys, Inc. v. Anchen Pharms., Inc.*, 233 F.R.D. 648, 653 (C.D. Cal. 2006) (quoting *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460-61 n. 4 (N.D. Cal. 1978) (quotation marks omitted). To obtain a protective order under Rule 30(d)(3), the moving party must show that the examination "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3). "Unless a sufficient showing of these grounds are made the motion will be denied." *Biovail*, 233 F.R.D. at 653.

Here, Plaintiffs make no such showing. The Court agrees that GEICO posed an inartful – indeed objectionable – question to Mr. Wornell, **"*but the examination still proceeds,*"** and **the testimony is taken subject to any objection**." Fed. R. Civ. P. 30(c)(2) (emphasis added). Yet Plaintiffs' counsel did not give GEICO's counsel an opportunity to rephrase the question; instead, Plaintiffs' counsel accused GEICO's counsel of "witness tampering" and unilaterally terminated the deposition without the proper

grounds to do so. "It is not the prerogative of counsel, but of the court, to rule on objections. Indeed, if counsel were to rule on the propriety of questions, oral examinations would be quickly reduced to an exasperating cycle of answerless inquiries and court orders." *In re Omeprazole Pat. Litig.*, 227 F.R.D. 227, 230 (S.D.N.Y. 2005) (citation and quotation marks omitted); *see also Daniels v. Dixon*, No. 821CV00223CJCMAR, 2022 WL 3574443, at *3 (C.D. Cal. July 12, 2022) ("Whether Plaintiff's questions are irrelevant or will lead to responses that are ultimately inadmissible as evidence is for the Court to determine, not for defense counsel.").

Plaintiffs contend that GEICO's counsel failed to lay the proper foundation under Federal Rule of Evidence 612 for refreshing a witness's recollection with a document; therefore, they argue, "it was entirely appropriate to stop Mr. Wornell's examination …to seek guidance from the Court," and to allow "the Court to protect against admission of inadmissible evidence." *Pls' Br.*, p. 12,13, Dkt. 80. Plaintiffs cite *De Wagenknecht v. Stinnes*, 243 F.2d 413 (D.C. Cir. 1957), as an example of a court stopping a deposition "to protect the witness." *Id.* at 13. Plaintiffs' reliance on *Stinnes* is misplaced.

*Stinnes* involved a witness who "was eighty-two years of age" and "in bad health." 243 F.2d at 417. After the cross-examination of the witness "had lasted thirteen days and part of another," the witness was ordered by her doctor to return to the hospital, where her deposition continued for another six days. On the sixth day of being deposed in the hospital, the witness's "deposition was suspended on the order of her physician," who opined that her continued examination could seriously endanger her health and possibly her life. *Id.* at 16. The witness moved to terminate the deposition, and the district court

"concluded that the examining parties have had fair and ample opportunity to go into the questions in controversy and found that further cross-examination of petitioner would be oppressive." *Id.* at 417. On appeal, the D.C. Circuit agreed, finding the district court did not abuse its discretion in terminating the deposition.

In this case, by contrast, there was nothing rising to the level of bad faith or oppressiveness about defense counsel's questioning of Mr. Wornell. Mr. Wornell was not in "bad health" – in fact, he testified he was "[f]at and pudgy, but healthy." *Wornell Dep.* 9:8-11, Dkt. 79. He was not deposed over days – or even hours; rather his examination lasted less than 10 minutes before Plaintiffs shut it down, and GEICO certainly did not have "fair and ample opportunity to go into the questions in controversy" during its examination of Mr. Wornell. Nothing about these facts suggests that GEICO acted in an annoying, embarrassing, or oppressive manner in its examination of Mr. Wornell. In fact, if anything, Plaintiffs' reliance on *Stinnes* underscores the extent of annoying, embarrassing, or oppressive questioning required to justify termination a deposition.

Plaintiffs' argument that it was appropriate to stop Mr. Wornell's deposition and seek Court intervention "to protect against admission of inadmissible evidence" fares no better. "Testimony offered at a deposition differs from testimony offered at trial." *Dudley v. City of Kinston*, No. 4:18-CV-00072-D, 2020 WL 7049554, at *1 (E.D.N.C. Dec. 1, 2020). Only witness testimony that is admissible – i.e., testimony that is both relevant and complies with the Federal Rules of Evidence – may be presented to the jury at trial. But a deposition is a discovery mechanism, and information within the scope of discovery

"*need not be admissible in evidence* to be discoverable." Fed. R. Civ. P. 26(b)(1)
(emphasis added).

For this reason, "the process for handling potentially inadmissible material differs
between discovery and trial." *Dudley*, 2020 WL 7049554, at *2. At trial, the judge must
decide whether evidence is admissible before it is presented to the jury. In a deposition,
by contrast, a party may discover inadmissible information and bear "the risk of asking
questions at a deposition that could ultimately be useless at trial." *Daniels*, 2022 WL
3574443, at *3 (citing *Oakes*, 179 F.R.D. at 283 ("Rule 26(b) is liberally interpreted to
permit wide-ranging discovery of information even though the information may not be
admissible at the trial.")).

Simply put, whether Mr. Wornell's deposition testimony would be admissible at
trial had no bearing on the propriety of GEICO's questioning of Mr. Wornell during his
deposition. GEICO is entitled to seek discovery regarding Mr. Wornell's memory – or
lack thereof – of both the accident and his communications with GEICO after the
accident. In a similar vein, Plaintiffs had no basis to prevent defense counsel from
showing Mr. Wornell documents before questioning him. *Dudley*, 2020 WL 7049554, at
*7 (finding no basis to prevent defense counsel from showing deponent with low IQ
documents "other people had written decades ago" before questioning her). To the
contrary, such practice is neither unusual nor improper – particularly in Mr. Wornell's
deposition when he had just said that he could remember certain things if "people bring it
up and jog my memory about it." *Wornell Dep.* 8:18-9:5, Dkt. 79.

In lieu of terminating the deposition on the grounds that GEICO's counsel had not laid the proper foundation to refresh Mr. Wornell's recollection, Plaintiffs' counsel should have stated any objection "concisely in a nonargumentative and nonsuggestive manner," Fed. R. Civ. P. 30(c)(2), since that omission could have been remedied by asking another or different question, Fed. R. Civ. P. 32(d)(3)(B). *See also Dudley*, 2020 WL 7049554, at *7 ("And a brief objection to defense counsel's failure to lay a proper foundation would be sufficient since that omission can be remedied by asking another question."). If the proper foundation were not laid, GEICO bore the risk that Mr. Wornell's deposition testimony on that topic may not be admissible later in the case. *Id. See also ACF W. USA, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. CV 12-0182-BAM, 2012 WL 5838865, at *3–4 (E.D. Cal. Nov. 16, 2012) (noting counsel "bore the risk" by asking questions at a deposition that may have led to inadmissible information, but those questions were not inappropriate). Plaintiffs' unilateral termination of the Wornell deposition was therefore unjustified and warrants sanctions.

## 2.  Sanctions Under Rule 30

"The court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2); s*ee also Biovail Labs, Inc*., 233 F.R.D. at 653 (awarding monetary sanctions after a party unilaterally terminated the deposition). Rule 37(a)(5) applies to an award of expenses under Rule 30(d). Fed. R. Civ. P. 30(d)(3)(C).

Rule 37(a)(5) provides that if a motion compelling discovery is granted, the Court "must" impose sanctions for the reasonable costs in making the motion, unless the (1) GEICO did not attempt to obtain the disclosure in good faith without court action prior to filing its motion, (2) Plaintiffs' objection and termination of the deposition was substantially justified, or (3) other circumstances make an award unjust. See Fed. R. Civ. P. 37(a)(5)(A). The Court finds none of these exceptions apply. Accordingly, the Court grants GEICO's request for sanctions.

## 3. Amount of Sanctions

GEICO seeks a monetary sanction in the amount of $6,032.93. As support for this request, GEICO submits that it incurred the following expenses association with the terminated deposition: (1) court reporting services in the amount of $201.61; (2) videographer services in the amount of $304.30; (3) private investigator and personal service fees in the amount of $115.00; and (4) attorney and paralegal fees and costs in the amount of $5412.0, for the time expended in preparing for Mr. Wornell's deposition. *Henson Decl.*, ¶¶ 5, Dkt. 79.

Plaintiffs do not dispute that GEICO should be allowed to recover the costs associated with court reporting services, videographer services, and private investigator and personal service fees in the event the Court awards sanctions "because those are the only costs the Defendant will have to expend again to have Mr. Wornell deposed again in the manner it intends to depose Mr. Wornell." *Pls' Resp.*, p. 16, Dkt. 80. As Plaintiffs do not object, the Court will award GEICO $620.91 for the above costs.

Plaintiffs, however, appear to dispute that GEICO is entitled to recover any of its attorney fees it incurred in preparing for Mr. Wornell's deposition. The Court disagrees. As just noted, Rule 30(d)(2) explicitly allows a court to impose "an appropriate sanction—*including the reasonable expenses and attorney's fees incurred by any party*"—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2) (emphasis added). Thus, the Court may award "reasonable expenses and attorney's fees" incurred by GEICO in preparing for Mr. Wornell's improperly terminated deposition.

However, GEICO has failed to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). The Court therefore cannot properly determine whether GEICO's requested fees are reasonable using the lodestar approach. *Id.* GEICO shall therefore submit "satisfactory evidence" that the requested rates comport with the prevailing rates in the community within 14 days of entry of this order. In addition, GEICO shall submit a declaration summarizing the number of hours expended by each attorney or paralegal in connection with Mr. Wornell's deposition.

## ORDER

**IT IS ORDERED that:**

1.   Defendant GEICO Choice Insurance Company's Motion for Expenses Re Improperly Terminated Deposition (Dkt. 78) is **GRANTED**.

2.  GEICO shall submit "satisfactory evidence" that the requested rates are in line
    with those prevailing in the community for similar services of lawyers of
    reasonably comparable skill and reputation within 14 days of entry of this
    order. In addition, GEICO shall submit a declaration summarizing the number
    of hours expended by each attorney or paralegal in connection with Mr.
    Wornell's deposition.

DATED: April 24, 2024

B. Lynn Winmill
U.S. District Court Judge