UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS ORTIZ VEGA disabled adult, E.O.R. minor child, K.O.R. minor child, L.O.R. minor child, by and through SILVIA ORTIZ, Guardian, TANYA GREENE as personal representative of the Estate of Cole Hatcher and on behalf of his heirs, and C.C.H. a minor child by and through SALONE PAGE, mother and natural guardian, as Assignees of SHENTASHA BYBEE,<br><br>        Plaintiffs,<br><br>        v.<br><br>GEICO Choice Insurance Co. and Does I to X ROE Corporations I to X,<br><br>        Defendants. | Case No. 1:21-cv-00498-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it several motions. Substantively, Plaintiffs have moved for summary judgment on the claim of bad faith (Dkt. 104), and Defendant GEICO Choice Insurance Co. has moved for summary judgment on all counts (Dkt. 105). Plaintiffs have also moved to amend the complaint to add a prayer for punitive damages (Dkt. 101) and to exclude the testimony of GEICO expert Dan Kohane (Dkt. 102). GEICO in turn has moved to strike the opinion of Plaintiffs'

**MEMORANDUM DECISION AND ORDER - 1**

rebuttal expert Terry Ratliff (Dkt. 97) and Plaintiffs' most recent supplemental filing (Dkt. 131).

For the reasons explained below, the Court will grant summary judgment to GEICO and deny partial partial summary judgment to Plaintiffs. The remaining motions will be denied as moot.

## BACKGROUND

The relevant facts are undisputed.[1] This case arises from a catastrophic car crash in November 2017. Shentasha Bybee drove while drunk, sped through a stop sign, and hit a minivan. With Bybee were two passengers: her boyfriend Michael Wornell, who owned the vehicle, and Cole Hatcher. The minivan was driven by Luis Ortiz Vega. Ortiz Vega's wife, Martina Rivera Sandoval, was a passenger, along with three of their four children: L.O.R, E.O.R., and K.O.R.

Of the occupants in Bybee's car, Hatcher died, and Bybee and Wornell were both hospitalized with severe injuries. In the other vehicle, Sandoval and L.O.R.[2] died, Ortiz Vega was permanently disabled, and E.O.R and K.O.R. were injured.

Bybee had a car insurance policy through GEICO. The policy afforded

---

[1] In reviewing the facts, the Court will grant take judicial notice of the matters of public record requested by the parties. *See* Dkt. 106, 110.

[2] Ortiz Vega and Sandoval had an additional child also known as L.O.R. who was not in the car but was involved in the proposed insurance settlement. Subsequent references to L.O.R. refer to the surviving child.

MEMORANDUM DECISION AND ORDER - 2

bodily injury liability coverage of $50,000 total per occurrence and $25,000 per person. GEICO also agreed to defend Bybee in suits for damages payable under the policy. GEICO had the right to control settlement of claims, and the policy included a cooperation clause providing that any obligations incurred by the insured would be at her own cost. *McClain Decl.*, Ex. 1- 2, Dkt. 105-3.

Bybee was released from the hospital in mid-December, about a month after the crash. GEICO learned of the accident a few days later and spoke with Bybee and her mother. Bybee said that she had brain damage and no memory of what happened, and she gave GEICO authorization to communicate with her mother about any claims. Several weeks after that, she was arrested for vehicular manslaughter. Around the same time, GEICO determined that she was 100% liable for the accident. GEICO sent a letter to her last known address explaining that the claims against her could exceed her policy limits and that GEICO would defend her in a lawsuit.

The Ortiz Vega and Hatcher families obtained legal representation from Joe Rockstahl. In early January 2018, GEICO offered its global policy limits of $50,000, with the condition that the settlement cover all seven potential claimants. Rockstahl indicated that the claimants accepted those terms, and GEICO and Rockstahl began communicating about the allocation of the funds. In mid-February, after several different verbal proposals, Rockstahl informed GEICO that

the injured parties agreed to allocate $24,000 to Ortiz Vega's daughter L.O.R., who was not in the crash, as heir to her mother and brother; $24,000 to the Hatcher family; and $2,000 to Wornell. GEICO's claims handler asked for the proposal in writing and explained that she would need to consult a supervisor or legal counsel before accepting.

Rockstahl did not put the proposal in writing. Instead, he contacted GEICO more than a month later, on March 23, to say that the Ortiz Vega family had the necessary court documents, including minor's compromise orders, and that the checks should be issued to the Rockstahl Law Office. On March 29, GEICO spoke with Bybee's mother about the settlement proposal and expressed hope that the civil claims against Bybee would be resolved. GEICO explained that it had offered global policy limits to the injured parties and was waiting for documents from the attorneys, though it did not provide details about the proposed allocation. *See Pls.' Statement of Facts* ¶¶ 53, 58, Dkt. 104-2

On March 30, Rockstahl sent GEICO a letter about the settlement. The letter articulated the same allocation that had previously been discussed. It did not, however, discuss releases of any of the claims—a condition of GEICO's initial settlement offer. Additionally, the letter attached minor's compromise orders pertaining to a separate settlement between the children and their father's insurance, not between the children and GEICO. Compromise orders are required

**MEMORANDUM DECISION AND ORDER - 4**

for any settlement involving a minor. *See McClain Decl.*, Ex. 8, Dkt. 104-3.

GEICO did not send checks, but the parties appeared to still agree about the terms of the settlement. Over the next several months, GEICO and Rockstahl communicated about medical liens stemming from the accident. In late May, Rockstahl's paralegal said that she had placed a request involving the liens but that it could be some time before they were resolved.

On June 5, Rockstahl wrote to GEICO that Bybee was scheduled to be sentenced later that month and that the Hatcher Estate would likely make a restitution claim if the settlement was not finalized. The letter repeated the request that GEICO send checks for the previously discussed allocations. Rockstahl attached a release for Hatcher and the same incorrect minor's compromise orders previously provided. GEICO responded on June 11 that it would still offer global policy limits to settle all seven claims, and that it needed compromise orders for the minors involved. GEICO also hired attorney David Perkins as outside counsel to represent GEICO's interests. *McClain Decl.*, Ex. 10-11, Dkt. 104-3.

On June 13, Rockstahl sent another letter, this time to Perkins, reiterating the allocation of the $50,000. The letter did not explain which claims would be released by settlement, nor did it include additional releases or correct compromise orders. Perkins informed GEICO that he was reviewing the settlement information to determine whether it would extinguish all potential liability. On June 26, Perkins

advised GEICO against issuing payments because the compromise orders were deficient and because liens, outstanding bills, and claims for reimbursement had to be waived to avoid exposing Bybee to extensive liability. That same day, Rockstahl informed GEICO that the Hatcher family needed to be paid immediately or else they would file for restitution. *McClain Decl.*, Ex. 12-13, Dkt. 104-3.

During this time, GEICO did not directly discuss the settlement further with Bybee or her mother. Bybee was still in jail and recovering from her brain injury, and her mother had stopped answering GEICO's calls. GEICO primarily communicated with Bybee through her boyfriend Wornell, who had also been in the accident and was to receive $2,000 from the proposed settlement. The claims handler assigned to the case told a GEICO attorney that she was sharing "[a]s much as I could discuss" with Bybee through Wornell but described them both as "very uneducated children." *Def.'s Statement of Facts* ¶¶ 92, 100-03, Dkt. 105-2.

On August 1, Wornell told GEICO that Bybee wanted to settle the matter as quickly as possible. The next day, GEICO spoke with Rockstahl about the minor's compromise orders, and Rockstahl indicated that he and the families would make corrections. Perkins drafted proposed court petitions and sent them to Rockstahl on August 13. The petitions were supposed to be signed by guardian Silvia Ortiz Vega on behalf of E.O.R., L.O.R., and K.O.R., the three children involved in the settlement. However, the petitions were never returned or submitted to the court.

**MEMORANDUM DECISION AND ORDER - 6**

Instead, on August 15, Rockstahl informed Perkins that E.O.R., K.O.R., and Ortiz Vega were not part of the settlement—a statement that went against the previous agreement that all claims would be released. The letter also failed to provide a compromise order for L.O.R., who was to receive the settlement money. Perkins advised GEICO not to send payments because of problems with the minors' compromises and Rockstahl's other misunderstandings regarding the settlement. *See McClain Decl.*, Ex. 14-16, Dkt. 105-3.

Around this same time, in early August 2018, a criminal restitution order of $1,053,380.71 was entered against Bybee. According to Rockstahl, the prosecutor had previously indicated that the state would not seek restitution if insurance paid anything. *Koehler Decl.*, Ex. 10 at 32:21-33:5, Dkt. 104-3. Later that month, with the global settlement breaking down, GEICO hired an attorney to represent Bybee.

In September, Rockstahl sent Perkins a short email saying, "Please see attached, they each have provisions releasing Bybee and Geico." This letter attached a single release for Hatcher's estate and the same incorrect minor's compromise order that Rockstahl had already provided twice. Rockstahl explained, "A colleague suggested I try this before filing a complaint against Ms. Bybee." *Henson Decl.*, Ex. 7, Dkt. 105-5.

Bybee's attorney contacted her in November 2018 and explained the status of the case. From February to June of 2019, he tried to resurrect the settlement

offer, with distributions of $24,000 to the Ortiz Vega family, $24,000 to the Hatcher family, and $2,000 to Wornell. Rockstall did not respond. In July 2019, the Ortiz Vega and Hatcher families sued Bybee.

Rockstahl's co-counsel in the lawsuit contacted Bybee's attorney in December 2020 with a proposed settlement wherein Bybee would stipulate to judgments against her in exchange for a covenant not to execute and the assignment of her claims against GEICO. In response, GEICO hired another attorney to independently advise Bybee on the settlement. *Thompson Decl.*, Ex. 6, Dkt. 105-6.

In July 2021, Bybee settled for a total of $9,524,895. Plaintiffs entered a covenant not to execute the judgment or enforce the restitution order, and Bybee assigned her claims against GEICO to the plaintiffs. Bybee did not seek or obtain GEICO's consent for the settlement.

Plaintiffs, as assignees of Bybee, sued GEICO in December 2021 for breach of contract and bad faith. After extensive discovery, both parties moved for summary judgment (Dkt. 104, 105), and Plaintiffs moved to amend the complaint to add a prayer for punitive damages (Dkt. 101). The Court held oral arguments on November 13, 2024, and now issues its decision.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims" and thereby prevent these matters "from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Rather, the dispute must concern a material fact— one "that may affect the outcome of the case." *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to produce evidence sufficient to support a favorable jury verdict. *Deveraux*, 263 F.3d at 1076. The non-moving party must show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324. This requires identifying "specific, triable

facts," and the Court need not "comb through the record to find some reason to deny a motion for summary judgment." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003). All evidence must be viewed in the light most favorable to the non-moving party, but the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ANALYSIS

Despite the heartbreak of the underlying facts, this case boils down to several straightforward questions of insurance law. As a preliminary matter, it is important to keep in mind that the tragedy of the accident is not being litigated here. Bybee's decision to drive while drunk shattered several families, including her own. The Ortiz Vega sisters lost their mother and brother, and their father can no longer walk or speak. Cole Hatcher's son, born after the crash, will never know his father.

But the harm that Bybee caused others is not at issue; that was the subject of Plaintiffs' lawsuit against her and the resulting settlement. Nor is it argued that GEICO owed any duty to the victims of the crash. The questions at hand concern only GEICO's obligations to Bybee. Did GEICO act in good faith to indemnify and defend Bybee? The undisputed facts show that GEICO did.

### 1.  The Tort of Bad Faith

The heart of Plaintiffs' case is that GEICO acted in bad faith by not settling the claims or communicating settlement offers to Bybee. The Court will first discuss the nature of an insurance bad faith claim and then will analyze GEICO's duty to indemnify, duty to defend, and alleged bad faith.

"[I]nsurance policies are contracts, and the parties' rights and remedies are primarily established within the four corners of the policy." *Lanningham v. FBMIC of Idaho*, 551 P.3d 1251, 1254 (Idaho 2024). Like any contract, insurance agreement impose a duty of good faith and fair dealing in contractual performance. *White v. Unigard Mut. Ins. Co.*, 730 P.3d 1014, 1016 (Idaho 1986). But the duty of good faith in the insurance context, which is "characterized by elements of public interest, adhesion and fiduciary responsibility," goes beyond the strict terms of the policy. *Id.* at 1019. "The insurance contract has long been recognized as giving rise to a special relationship between insurer and insured which requires that the parties deal with each other fairly, honestly, and in good faith." *Id.* A breach of this duty gives rise to the tort of bad faith, a wrong "separate and apart from a breach of contract per se." *Id.* at 1017 (quoting *Anderson v. Continental Ins. Co*, 271 N.W.2d 368, 374 (Wis. 1978)).

This duty of good faith extends to third-party claims. "An insurer is under a duty to exercise good faith in considering offers to compromise an injured party's

claim against the insured for an amount within the insured's policy limits." *Truck Ins. Exchange v. Bishara*, 916 P.2d 1275, 1278 (Idaho 1996). Under Idaho law, this means that the insurer must give "'equal consideration' to the interests of its insured in deciding whether to accept an offer of settlement." *Id.* at 1279.

In *Bishara*, the Idaho Supreme Court articulated a number of factors considered under this "equality of consideration" test. *Id.* The most important is communication: "whether the insurer has failed to communicate with the insured, including particularly informing the insured of any compromise offers." *Id.* at 1280. Another significant consideration is "the amount of financial risk to which each of the parties will be exposed in the event an offer is refused." *Id.* Other lesser factors include the strength of the injured claimant's case; whether the insurer has thoroughly investigated the claim; whether the insured followed the legal advice of its own attorney; any misrepresentations by the insured which misled the insurer in settlement negotiations; and any other factors that indicate bad faith. *Id.*

*Bishara* concerned an insurer's failure to settle for policy limits following a fatal accident caused by the faulty installation of tires. *Id.* at 1277. The Bisharas, who had installed the tires and sold the vehicle, had personal injury liability insurance with a limit of $300,000 per occurrence. *Id.* The victims of the crash sued the Bisharas and several other parties, and they eventually offered to settle with the Bisharas for policy limits. *Id.* at 1277-78. The proposal would have fully

settled the Bisharas' direct liability but allowed the plaintiffs to collect on a judgment against other tortfeasors for an amount determined to be the Bisharas' share of fault. *Id.* at 1278. The plaintiffs would then be obliged to indemnify the Bisharas for such an amount using excess funds from the other tortfeasors. *Id.* at 1281. The insurer rejected the settlement without explaining it to the Bisharas, arguing that the agreement would not fully extinguish liability because the plaintiffs could simply abscond with the excess funds. *Id.* at 1278, 1281. The case went to trial, and after being found liable, the Bisharas stipulated to $4,000,000 in damages. *Id.* at 1278. They assigned their bad faith claim against the insurer to the plaintiffs in exchange for a covenant not to execute the judgment. *Id.*

The trial court granted summary judgment to the insurer, but the Idaho Supreme Court reversed. Applying the "equality of consideration" standard, the court concluded the record lacked evidence that the insurer communicated the substance of the settlement proposal to the Bisharas. *Id.* at 1282-83. If the insurer had shared this information, the Bisharas might have been willing to risk the potential for a contribution action, or they could have asked the insurer to try to negotiate alternative terms that would have more fully protected them. *Id.* Without evidence of the insurer's communications, the court ruled, summary judgment was improper regardless of other factors at issue. *Id.* at 1284.

One takeaway from *Bishara* is that an insured can have a viable bad faith

claim even when the insurer was not given the opportunity to completely settle liability within policy limits. But several aspects of *Bishara* are worth highlighting because of how much they diverge from the circumstances present in Bybee's case. First, the plaintiffs provided a clear settlement proposal in writing—in other words, there were specific and concrete terms for the insurer to share with the Bisharas. Second, the settlement proposal would have released the Bisharas from all direct liability. They would have exposed only through a hypothetical contributory action, and even then, only if the plaintiffs violated the settlement terms by absconding with the excess funds. Third, nothing suggests that communication with the Bisharas was unusually difficult. The insured was not, for instance, in jail or recovering from a traumatic brain injury. Each of these circumstances bears on the Court's analysis.

## 2. GEICO's Duty to Indemnify

Plaintiffs argue that GEICO did not fulfill its duty to indemnify because it never sent checks for the claims. The logic is that although GEICO offered to settle for policy limits, it failed to actually pay the claims and therefore did not indemnify Bybee as required by the contract. *Pls.' Opp'n* at 5, Dkt. 114. The problem with this argument is that claimants' then-counsel, Joe Rockstahl, never provided GEICO with the necessary documents, despite GEICO's repeated requests. A detailed analysis of the timeline demonstrates that GEICO could not

have paid the claims without breaching its duties to Bybee due to these omissions and uncertainties.

Plaintiffs point to offers to resolve the claims presented on February 13, March 23, March 30, and June 15 of 2018. These were all really the same offer—a global settlement for policy limits. GEICO agreed to this proposal but never received the court authorizations and other documents necessary to issue checks, an essential fact that Plaintiffs do their best to obscure.

The February 13 offer was made verbally after a series of discussions about a settlement that would cover all seven claimants. GEICO asked for the proposal in writing, which would have been reasonable under any circumstances but was particularly important because Rockstahl had repeatedly changed the proposed allocations. Rockstahl did not put the proposal in writing but instead called again on March 23 to say that the court documents for the Ortiz Vega family were prepared and that the check should be sent to "Rockstahl law off for benefit of [E.O.R.]".[3] *Pls.' Statement of Facts* ¶ 53, Dkt 104-2. Then, on March 30, he sent minor's compromise orders pertaining not to GEICO but to a different insurer. *See McClain Decl.*, Ex. 8, Dkt. 105-3.

---

[3] One example of Rockstahl's inconsistency is which of the surviving Ortiz Vega children would receive the family's allocation. He sometimes referred to L.O.R., who was not the accident, and sometimes to E.O.R., who had been injured.

At this point, GEICO lacked the necessary documents to pay any of the claims. Compromise orders are required for any settlement involving a child. Idaho Code § 15-5-409(a). Even if GEICO was obliged to discharge L.O.R.'s claim without releases for any other potential claimants, it could not have done so because it did not have a valid compromise order for L.O.R. Plaintiffs suggest that GEICO should have simply mailed a check after the March 30 letter, without waiting for releases or compromise orders, but that would have been unlawful, not to mention a plain contravention of GEICO's duties to resolve the case in a manner that would protect Bybee against future claims.

Plaintiffs imply that there was a new proposal in June. This "proposal" was really Rockstahl's demand that GEICO send payments to L.O.R. and Hatcher's estate before Bybee's sentencing at the end of the month, even though he had not provided the necessary documents. That letter included the same incorrect minor's compromise order for L.O.R. that had previously been sent and provided a release only for Hatcher's estate. GEICO's attorney responded that GEICO needed valid compromise orders and that the offer was for settlement of all seven claims. Rockstahl twice more reiterated the demand for distribution but did not confirm (or deny) the settlement terms or provide compromise orders for the minors.

Plaintiffs make much of the fact that GEICO did not issue checks prior to Bybee's sentencing, which resulted in a restitution judgment of over $1 million.

**MEMORANDUM DECISION AND ORDER - 16**

But GEICO could not have sent checks without breaching its duty to Bybee because it had not received the necessary authorizations and releases. Rockstahl essentially manufactured an arbitrary deadline from a criminal case in which GEICO had no involvement, and then made it impossible for GEICO to meet that deadline because of his own errors and inconsistencies.

This same pattern continued in August and September. In an effort to settle the matter quickly, as Bybee wished, GEICO's attorney spoke with Rockstahl about submitting accurate compromise orders. Apparently tired of Rockstahl's inaction, Geico's attorney, this time, drafted proposed petitions and releases. Instead of submitting the petitions for court approval and obtaining the required signatures on the releases, Rockstahl communicated what appeared to be a change in the terms of the settlement, telling GEICO that Luis Ortiz Vega, E.O.R., and K.O.R. were not included in the settlement. This represented a major change from the terms discussed since January, but Rockstahl did not present this as a rejection of the initial proposal and reopening of negotiations. He simply stated, with no explanation, that those three victims were "not a part of this settlement." *McClain Decl.*, Ex. 15, Dkt. 105-3. He also failed to provide a compromise order for L.O.R. A month later, Rockstahl yet again sent the same incorrect minor's compromise

order—at least the third time he provided an order for the wrong settlement.[4]

At this point, it seems that the terms of claimants' proposed settlement were not clear to anyone, including to claimants' counsel. Rockstahl testified that his understanding of the deal as late as January 27, 2019, was that the settlement would release all civil claims, including potential claimants who did not receive allocations. *Henson Decl.*, Ex. 13 (Rockstahl Tr.) at 52:19- 53:11, Dkt. 105-6. A month later, however, when Bybee's attorneys sent a written settlement proposal with these terms, Rockstahl never responded. Nor did he respond when Bybee's attorney followed up in April or June. In July, Rockstahl sued GEICO on behalf of the Hatcher and Ortiz Vega families.

The Court agrees with Plaintiffs that it is unfortunate that the claims were not paid in early 2018, when GEICO, Bybee, and the claimants all appeared to agree on a settlement. But the record unambiguously shows that this delay was the fault of claimant's counsel. Rockstahl's failures during this period do not provide evidence of a breach on GEICO's part, nor do they indicate that GEICO acted in bad faith. GEICO's policy limits offer and its subsequent efforts to finalize the proposal clearly satisfy GEICO's duty to indemnify.

---

[4] Plaintiffs acknowledge that GEICO never received the correct documents for the minor claimants. *See* Dkt. 130.

**MEMORANDUM DECISION AND ORDER - 18**

### 3.  GEICO's Duty to Defend

Plaintiffs next argue that GEICO breached its duty to defend Bybee because it failed to provide her with a timely and conflict-free defense.

GEICO was obliged to defend Bybee in lawsuits for damages potentially payable under the policy. The Idaho Supreme Court has explained that the duty to defend "arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1261-62 (Idaho 2002).

The Court struggles to see how providing counsel for Bybee starting in August 2018, nearly a year before she was sued, could suggest that GEICO breached its duty to defend. GEICO hired counsel for Bybee as soon as the global settlement started to break down—when a civil lawsuit became likely—and it hired a second independent attorney to provide advice on the subsequent settlement offer. Bybee herself has expressed satisfaction with counsels' performance. *Henson Decl.*, Ex. 14 (Bybee Tr.) at 42:9-13, Dkt. 105-6. Plaintiffs suggest that GEICO also had an obligation "to protect her from a restitution judgment," *Pl.'s Opp'n* at 8, Dkt. 114, but the restitution was in a criminal case for vehicular manslaughter. Even assuming, *in arguendo*, that prosecutors would not have sought restitution had the claims been paid, Plaintiffs do not cite a single case suggesting that a criminal prosecution could trigger GEICO's duty to defend.

For these reasons, there is no question that GEICO fulfilled its duty to defend Bybee.

### 4. GEICO's Communications with Bybee

GEICO's lack of communication with Bybee from February to August of 2018 is the core of Plaintiffs' bad faith claim. Plaintiffs rely on *Bishara* to argue that this alone justifies summary judgment in their favor on the bad faith issue.

"It is difficult," the *Bishara* court observed, "to imagine that an insurance company could be acting in good faith in considering its insured's interests if the insurer does not convey those offers to the insured for the insured's input." 916 P.2d at 1280. Applying this logic, Plaintiffs argue that even if the settlement would not release every claim, GEICO needed to communicate the offer to Bybee for consideration. Like the insurer in *Bishara*, GEICO could not unilaterally reject an offer simply because it would not fully extinguish liability.

But the record plainly contradicts Plaintiffs' insistence that "GEICO never tried to communicate with Bybee" about the settlement offers made by Rockstahl on February 13, March 23, March 30, and June 5. *See Pls.' Statement of Facts* ¶ 58, Dkt. 104-2. The offer at that point was the global settlement, and GEICO communicated the proposal to Bybee through her mother in late March. From March to August, GEICO worked to finalize the settlement, and there were no alternative terms for Bybee to consider. Plaintiffs dance around this, but Rockstahl

never actually proposed a different settlement, so there was nothing new to communicate. It was not until mid-August that Rockstahl suggested that the settlement would not release all the claims—and even then, calling his letter a new settlement proposal would be exceptionally generous.

An additional consideration is that Bybee was in jail and recovering from a serious brain injury. Her short-term memory was significantly impaired in the months after the accident. This alone would have made direct communication difficult, and her incarceration compounded these challenges. Bybee initially designated her mother to work with GEICO, but her mother became unresponsive once it became apparent that GEICO would not cover Bybee's physical therapy bills. *Def.'s Statement of Facts* ¶ 102, Dkt. 105-2. This left Wornell, to whom Bybee had granted a General Power of Attorney. Although perhaps less than ideal given that Wornell would have received money from the settlement, it was reasonable given the failure of other avenues of communication. Moreover, as soon as it became clear that the global settlement was faltering, GEICO hired Bybee an attorney who communicated directly with her.

For these reasons, GEICO's communications with Bybee do not support a bad faith action. There is no material question of fact in this regard. It might be a different story if Rockstahl had rejected the initial settlement offer and proposed an alternative arrangement, but this is not what occurred between February and June

of 2018. Plaintiffs' many pages of briefing obfuscate the essential fact that GEICO communicated the settlement offer to Bybee, then tried to pursue that settlement, then defended Bybee after the claimants—not GEICO—rejected the settlement.

GEICO fulfilled its duties and acted in good faith. On this basis, the Court will grant summary judgment to GEICO on all claims, and it is unnecessary to analyze whether Bybee suffered compensable damages or breached the policy's cooperation and no action clauses. It is also unnecessary to examine the merits of the motions to strike and exclude because the outcome of such a decision would not affect summary judgment.[5] Those motions will be denied as moot.

This is a very sad case, and the Court regrets any additional suffering that this litigation has brought to the victims of the crash. Bybee's actions took lives and shattered families, and the victims deserve remuneration for their injuries. But this underlying tragedy does not change the fact that it is harm to Bybee herself, not to the victims, that is being litigated here. And on this issue, the record is conclusive in favor of GEICO.

---

[5] Regarding the Motion to Strike at Dkt. 131, the Court will nonetheless note that the request for one-page supplemental briefing regarding the minor's compromise orders was not an invitation for further substantive arguments, nor to ignore the formatting requirements set out in Local District Civil Rule 5.2.

MEMORANDUM DECISION AND ORDER - 22

## ORDER

1.    Plaintiffs' Motion for Partial Summary Judgment (Dkt. 104) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (Dkt. 105) is **GRANTED**.

3.    Defendant's Motion to Strike Expert Opinion of Terry S. Ratliff (Dkt. 97) is **DENIED AS MOOT**.

4.    Plaintiffs' Motion for Leave to Amend Complaint to Allege Punitive Damages (Dkt. 101) is **DENIED AS MOOT**.

5.    Plaintiffs' Motion to Exclude Testimony of GEICO Expert Attorney Dan Kohane (Dkt. 102) is **DENIED AS MOOT**.

6.    Defendant's Motion to Strike Plaintiffs' Letter Brief (Dkt. 131) is **DENIED AS MOOT**.



DATED: January 2, 2025

B. Lynn Winmill
U.S. District Court Judge